**Mrs. Marie W. HALL, Executrix of the Estate of Howard Ray Hall, Deceased, and Mrs. Marie W. Hall, Individually, Plaintiff,**

v.

**ALLSTATE LIFE INSURANCE COMPANY, Defendant.**

Civ. A. No. EC 88–244–D–D.

United States District Court,
N.D. Mississippi, E.D.

Jan. 5, 1990.

Claude A. Chamberlin, Aberdeen, Miss., Roy O. Parker, Roy O. Parker, Jr., Tupelo, Miss., for plaintiff.

E. Clark Rumfelt, John E. Hughes, III, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

The matter is before the court on defendant's motion for summary judgment or, in the alternative, motion for partial summary judgment on the claim for punitive damages and plaintiff's motion for partial summary judgment that plaintiff is entitled to $10,000 under the insurance policy and punitive damages. After reviewing the motions, briefs, and evidence submitted by both plaintiff and defendant, the court is of the opinion that defendant is entitled to summary judgment on both claims. Plaintiff's motion is, therefore, denied.

## FACTS

Defendant issued an accidental death dismemberment insurance policy to Howard Ray Hall (Hall) in 1983 which was in force at the time his leg was amputated in 1987. The policy provided that Mr. Hall would be paid $10,000 in the event of a loss of a foot due to an injury. The policy defined injury to mean "bodily injury caused by an accident occurring while the insurance is in force and which injury results, within 365 days after the date of the accident, directly and independently of all other causes, in death or any other 'Loss' covered by the policy."

Hall had a medical history of hypertension, diabetes, myocardial infarction and peripheral vascular disease and underwent bypass surgery on his left leg in treatment of arteriosclerotic peripheral vascular disease in either July or August of 1987. On September 7, 1987, plaintiff claims that Hall fell in the woods near his home and bumped the incision from the bypass surgery on his leg. Hall's incision became infected and on September 16, 1987, Hall's left leg was amputated above the knee. The amputation was required due to the infection and was performed after other surgical procedures failed to correct the problem. Hall filed a claim for payment under his insurance policy with defendant.

Defendant denied Hall's claim stating: "The medical information provided indicates that the cause of amputation was due to diabetes. It appears that loss was not caused by an accident. I regret to inform you that we are unable to provide benefits for this loss." Thereafter, Marie Hall (plaintiff) filed suit to recover the $10,000 allegedly due under the insurance policy and punitive damages for defendant's gross and culpable negligence in handling Hall's claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party must present its basis for the motion after which the non-moving party then has a duty to present enough evidence to create a factual dispute. *Celotex v. Catrett Corp.*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If there is sufficient evidence before the court that would allow a jury to return a verdict for the non-moving party, the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202, 212 (1986).

It is not the function of this court to weigh the evidence and determine its credibility, but to decide whether there is a genuine issue for trial. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from

the facts are jury determinations, not those of the judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

The court must, however, determine if the factual issues are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505, 91 L.Ed.2d at 211.

## THE CLAIM UNDER THE INSURANCE POLICY

■ Defendant claims that there is no genuine issue of material fact and that the loss was not due to an "injury" as defined by the insurance policy and Mississippi law. Plaintiff contends that the insurance policy provision defining injury is invalid because it violates the public policy of the State of Mississippi.

A clause similar to the clause in this case was interpreted by the Mississippi Supreme Court to mean that the "intervening accident must be the proximate, direct cause" of the loss. *United States Fidelity & Guaranty Co. v. Hood,* 124 Miss. 548, 87 So. 115, 119 (Miss.1921). The court further stated:

It is not sufficient to defeat the policy that the accident may have made some latent disease active, which disease contributed in some degree to the death. If the disease was active and of such character and virulence as to endanger life apart from the accident, but might not have done so had the accident not happened, then that may be said to be a proximate contributing cause.

*Id.* 87 So. at 120. In *Peerless Insurance Co. v. Myers,* 192 So.2d 437 (Miss.1966), the court restated the rule as follows:

In cases involving insurance policies which allow recovery for "loss resulting directly and independently of all other causes from accidental bodily injury," recovery may be had where the accidental

injury aggravates, renders active, or sets in motion a latent or dormant pre-existing physical condition or disease, which in turn contributes to the disability or death for which recovery is sought, and where the accidental injury is a proximate cause of the resulting loss. (Citations omitted).

*Id.* at 439. The distinction between an active and a dormant disease still exists after *Peerless* as shown by subsequent cases in which recovery was denied under such provisions when the injury aggravated an active disease and the active disease contributed to the loss. *Travelers Ins. Co. v. Cowart,* 196 So.2d 887 (Miss.1967). *See also Britt v. Travelers Ins. Co.,* 556 F.2d 336 (5th Cir.1977).

In *Travelers,* plaintiff, a highway patrolman, was covered under an insurance policy that provided benefits for accidental deaths. Plaintiff died of a heart attack during some slight physical contact with a person under arrest. Plaintiff's physician testified that plaintiff had a long history of vascular disease and atherosclerosis, that the diseases were active, and that they contributed to plaintiff's death. The Mississippi Supreme Court held that the trial court erred in not directing a verdict relying on the principles distinguishing between an active and a dormant disease explained in *Mutual of Omaha Ins. Co. v. Deposit Guaranty Bank & Trust Co,* 246 Miss. 640, 151 So.2d 816, 820 (1963). *Travelers,* 196 So.2d at 888.

Plaintiff relies on *Bankers Life and Casualty Co. v. Crenshaw,* 483 So.2d 254 (Miss.1986) in its contention that the injury clause is invalid because it violates public policy. In *Bankers Life* the court referred to the *Peerless* rule as a "well-established principle" and seemed to reaffirm the rule. There was some language in the opinion that indicated that the plaintiff in that case could recover benefits under the insurance policy if he could show that the accident played any part in the loss. *Id.* at 271–72. However, the court is of the opinion that the language in *Bankers Life* was predicated upon the fact that plaintiff's contributing disease was dormant, not active, and

consequently, the disease was not a proximate, contributing cause of the loss. The court is of the opinion that *Bankers Life* did not implicitly overrule the *Peerless* line of cases as plaintiff contends. *See Eichenseer v. Reserve Life Ins. Co.*, 682 F.Supp. 1355, 1371 n. 15 (N.D.Miss.1988), *aff'd*, 881 F.2d 1355 (5th Cir.1989) (refused to consider *Bankers Life* an invalid policy provision case).

■ The next question is whether plaintiff is entitled to proceeds from the policy. That requires a determination of whether the accident was a proximate, contributing cause of Hall's amputation which necessitates an inquiry into the dormancy of Hall's disease at the time of the accident.

Viewing the evidence in the light most favorable to plaintiff, the court cannot find that there is enough evidence to allow a jury to conclude that Hall's diseases were latent or dormant. All the evidence indicates that at the time of the accident Hall was suffering from diabetes and arteriosclerotic peripheral vascular disease and that the arteriosclerotic peripheral vascular disease was active. Deposition of Dr. J.W. Williamson p. 19; Affidavit of Dr. Joe Bumgardner. He had been afflicted with arteriosclerotic peripheral vascular disease since at least 1980. Deposition of Dr. William T. Oakes p. 17. The activeness of Hall's disease is evidenced by the treatment he received just weeks before the amputation, bypass surgery on both legs. Hall's surgeon, Dr. J.W. Williamson, stated that the bypass surgery was performed on Hall's left leg in July 1987 because the disease was so severe that Dr. Williamson thought Hall was in danger of losing his foot. Deposition of Dr. J.W. Williamson p. 25–26. Dr. Williamson also stated that the disease played a significant, contributing part in the loss of Hall's leg. Deposition of Dr. J.W. Williamson p. 93–94. Dr. Joe Bumgardner, who reviewed the records but did not examine Hall, stated in an affidavit that "Mr. Hall's active and progressive peripheral vascular disease and diabetes were significant, substantial and material contributing causes to the amputation of Mr. Hall's left leg in September 1987, and these diseases were the most significant, if not the only, causes of the amputation."

Plaintiff has presented no proof that the atherosclerotic peripheral vascular disease or the diabetes were latent or dormant. The court is of the opinion that no genuine issue of material fact exists regarding the dormancy of either of those diseases in this case. Since the diseases were active and were substantial, contributing causes to Hall's loss, recovery under the insurance policy should be denied as a matter of law.

## CLAIM FOR PUNITIVE DAMAGES

■ To recover punitive damages under Mississippi law for an insurer's bad faith refusal to pay a claim one must show two things: (1) that the insurer had no legitimate or arguable reason to deny payment on the claim and (2) that the insurer acted with gross and reckless disregard for the insured's rights so that it becomes a heightened tort. *Life and Casualty Ins. Co. v. Bristow*, 529 So.2d 620, 622 (Miss. 1988). The heightened tort question need not be addressed if the insurer can demonstrate a legitimate or arguable reason for denying payment. *Id.*

■ The standard to be used in determining the issue of summary judgment on punitive damages is that used in determining a motion for directed verdict. *Szumigala v. Nationwide Mutual Ins. Co.*, 853 F.2d 274, 280 n. 8 (5th Cir.1988); *Dueringer v. General American Life Ins. Co.*, 853 F.2d 283, 287 n. 8 (5th Cir.1988); *Jones v. Benefit Trust Life Ins. Co.*, 617 F.Supp. 1542 (S.D.Miss.1985), *aff'd*, 800 F.2d 1397 (5th Cir.1986). The burden on the moving and non-moving parties is that of the motion for summary judgment. Thus, upon defendant's properly supported motion, it is plaintiff's burden to show that there exists evidence from which a reasonable jury could find (a) that defendant lacked a reasonably arguable basis to deny plaintiff's claim, and (b) that defendant acted with malice or such gross negligence as would evidence a reckless disregard for the rights of the plaintiffs. The court is of the opinion that plaintiff has not made such a showing.

Plaintiff contends that the court should consider only the information available to defendant when it denied the claim and not any information obtained after the claim was denied. Such an approach is suggested by the decision in *Eichenseer v. Reserve Life Ins. Co.*, 881 F.2d 1355, 1362 (5th Cir.1989), where the Fifth Circuit Court of Appeals stated that such an approach may be proper depending upon the facts of a particular case. Assuming that the facts of this case dictate such an approach, the court is of the opinion that defendant had an arguable reason to deny Hall's claim at the time the claim was denied. The claim file that defendant based its denial upon contains credible information that Hall's loss was due to the accident and his pre-existing conditions of diabetes and peripheral vascular disease. Although Dr. Williamson indicated on the Attending Physician's Statement on November 30, 1987 that the accident was the sole cause of Hall's loss, he qualified that statement later in response to written questions from defendant. His response to the questions indicated that the loss was due to the accident and pre-existing peripheral vascular disease and diabetes and that the loss was only "possibly" accidental. The hospital records also indicated that diabetes played a part in the loss because the records show diabetes as a secondary diagnosis and/or complication. The court considers this to be credible evidence upon which defendant was justified in denying payment of the claim.

There is no evidence indicating malice or reckless disregard for Hall's rights on defendant's part. It received the claim on December 7, 1987 and denied payment on the claim on March 4, 1988. The claim was investigated and defendant uncovered credible evidence indicating that payment should be denied. It is the opinion of the court that a reasonable juror could not find that defendant lacked an arguable reason to deny the claim or that defendant acted with malice. Therefore, defendant is entitled to summary judgment on the claim for punitive damages.

An order shall issue in conformity with this opinion. All briefs, exhibits, affidavits, and other matters considered by the court in granting summary judgment are incorporated into the record.